WR-59,939-03

WR-59,939
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 8/6/2015 4:53:27 PM
Accepted 8/7/2015 8:03:05 AM
ABEL ACOSTA
CLERK

# IN THE TEXAS COURT OF CRIMINAL APPEALS
## AUSTIN, TEXAS

RECEIVED
COURT OF CRIMINAL APPEALS
8/7/2015
ABEL ACOSTA, CLERK

|  |  |
|---|---|
| **EX PARTE TRACY BEATTY,** )<br><br>**APPLICANT** ) | **Court of Criminal Appeals No. WR-59,939-03**<br><br>**Execution date: August 13, 2015** |

## APPLICANT'S RESPONSE TO STATE'S MOTION TO DISMISS SUBSEQUENT APPLICATION FOR WRIT OF HABEAS CORPUS AND TO DENY REQUEST FOR STAY OF EXECUTION

Applicant, Tracy Lane Beatty, respectfully asks this Court to deny the State's motion to dismiss, authorize him to proceed on his second application for writ of habeas corpus, and stay his August 13, 2015 execution. The State's motion is non-responsive; misrepresents the record and allegations contained in Mr. Beatty's application; and concedes a critical fact demonstrating that Mr. Beatty has satisfied the requirements for authorization under Section 5(a)(2) of Article 11.071 of the Texas Code of Criminal Procedure.

## A. The State makes critical factual misstatements in its motion to dismiss.

### 1. This is Mr. Beatty's *second* application for writ of habeas corpus.

Mr. Beatty would be remiss if he did not correct the State's misrepresentation that his subsequent application, filed on August 4, 2015, is his third state habeas writ. *See* Motion to Dismiss at 2, 7–8. The State claims that Mr. Beatty's first writ was filed on August 6, 2004, while his direct appeal was pending. *Id.* at 2. This is false. Mr. Beatty was still in trial on August 6, 2004. The jury did not answer the special issues on sentencing and the trial court did not issue its judgment until August 10, 2004. Mr. Beatty appears to have attempted to file a *pro se* document in this Court on August 6, naming the trial judge as the respondent. Mr. Beatty was denied leave to file the document. Thus, the first application filed on Mr. Beatty's behalf pursuant to article 11.071 was filed by Jeff Haas on January 4, 2007.[1] This is Mr. Beatty's second application filed under article 11.071.

---

[1] Article 11.071 "establishes the procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a *judgment* imposing a penalty of death." Tex. Code Crim. Proc. art. 11.071 § 1 (emphasis supplied). As no judgment existed at the time Mr. Beatty attempted to file the document, it could not be an application filed under article 11.071.

2

Neither the convicting court nor this Court treated Mr. Beatty's 2007 application as his second application, or even addressed this frivolous issue. The State's distortion of the record—the State described Mr. Beatty's application as his third more than ten times in its thirty-page motion—is misleading.

### 2. Mr. Beatty's application was filed one day before the deadline under this Court's Miscellaneous Rule 11-003.

Furthermore, the State faults Mr. Beatty or filing what it twice refers to as a "last minute" application. Motion to Dismiss at 10, 11. Mr. Beatty's application was timely filed on August 4, 2015, a day before the statutory deadline.[2] Miscellaneous Rule 11-003. Mr. Beatty could not have initiated these proceedings during his federal habeas corpus proceedings, which ended when the United States Supreme Court denied Mr. Beatty's petition for *certiorari* on May 18, 2015. He filed his application just twenty-two days after the State secured the warrant for his execution, and two-and-a-half months after he finished litigating his

---

[2] Undersigned counsel sent a copy of the application to the trial court on August 4, 2015, via UPS Next Day. He has received notice that the delivery will not take place until August 6, 2015, despite his best efforts to ensure its delivery on August 5, 2015. He has, nonetheless, satisfied this Court's filing rules.

federal habeas corpus remedies. This is expressly provided for under Miscellaneous Rule 11-003.

### B. The State misconceives the legal basis under which Mr. Beatty asks this Court to authorize his application.

The State's principal argument for dismissal, and the only argument relevant to the question now before this Court, is that Mr. Beatty has not satisfied the § 5(a)(1) standard to proceed on his second writ because he has not demonstrated that the factual or legal bases for the claims he now presents were unavailable at the time his first application was filed. Motion to Dismiss at 8–13. The motion thus addresses only subsequent claims filed under § 5(a)(1) and is therefore non-responsive to Mr. Beatty's claims, which are presented under the § 5(a)(2) gateway.[3]

The State quotes two cases for the proposition that Mr. Beatty must show that the factual or legal bases for his claims were previously unavailable before he may proceed on his application, arguing this is a standard attendant to all § 5 applications. Motion to Dismiss at 10. But

---

[3] Mr. Beatty has also asked the Court to find that the ineffective assistance of state habeas counsel in defaulting substantial ineffectiveness claims renders those claims "previously unavailable" for § 5(a)(1) purposes. However, this is only in the alternative to applying § 5(a)(2).

4

both of the cases cited, by their own terms, address only the standard under § 5(a)(1), which is irrelevant to this case. In *Ex parte Campbell*, 225 S.W.3d 418 (Tex. Crim. App. 2007), the sentence preceding the text quoted in the State's motion to dismiss states,

> [t]o satisfy *Section 5(a)(1)*, a subsequent application must contain sufficient facts establishing that "the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application."

*Id.* at 421 (emphasis added). Similarly, the State is correct that in *Ex parte Staley*, 160 S.W.3d 56 (Tex. Crim. App. 2003), this Court required the applicant to demonstrate that the factual or legal basis of his claim was not available when he filed his previous application. Because the Court found the applicant failed to do so, it "dismiss[ed] the present application for a writ of habeas corpus under *Article 11.071, § 5(a)(1)*[.]" 160 S.W.3d at 63 (emphasis added).

The State's motion to dismiss asks this Court to apply an entirely incorrect legal standard to Mr. Beatty's application, and then fails to make any arguments that address the relevant legal standard. Mr.

5

Beatty's application states the applicable law in Section D of the application, titled "Mr. Beatty should be authorized to proceed on this application under Texas Code of Criminal Procedure Article 11.071, Section 5(a)(2)." The law requires that Mr. Beatty demonstrate "sufficient specific facts establishing that by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt[.]" TEX. CODE CRIM. PROC. art. 11.071, § 5(a)(2).

The State has not argued that Mr. Beatty has failed to meet this standard. Indeed, the State has conceded that Ms. McCarty's hearsay testimony was material evidence that was necessary for the State to meet its burden on the burglary charge. *See* Motion to Dismiss at 14 (the McCarty statement was "important to State case [sic]" and "served as the basis for the underlying felony charges of Robbery and Burglary in the indictment"). This concession is an explicit recognition by the State that Mr. Beatty could not have been found guilty of capital murder without Ms. McCarty's hearsay testimony. Thus, the State tacitly concedes that the claims Mr. Beatty has presented about Ms. McCarty's testimony may be appropriately authorized for further review under § 5(a)(2).

6

**C. The State offers no reason for this Court to abstain from revisiting *Ex parte Graves*, and again misrepresents Mr. Beatty's argument.**

The State argues that Mr. Beatty recognized that he failed to meet the requirements of Section 5(a), and therefore pursued an argument under *Ex parte Graves*, 270 S.W.3d 103 (Tex. Crim. App. 2002), which is patently false. *See* Motion to Dismiss at 12. Mr. Beatty has presented specific facts demonstrating that each of his facially meritorious constitutional claims satisfies Section 5(a)(2), because, individually and cumulatively, it is more likely than not that but for these violations he could not be convicted of capital murder.

Nonetheless, Mr. Beatty asserts that the evidence that his initial state habeas counsel was ineffective is so compelling, and that he has demonstrated sufficient prejudice because of the likelihood of success on the merits of the claims state habeas counsel forfeited, that this is the appropriate case for the Court to reconsider its ruling in *Ex parte Graves*, 70 S.W.3d 103. The State's motion to dismiss offers no argument why this Court should refrain from revisiting *Graves*. Instead, it points out that the Court has not done so before now. Motion to Dismiss at 12.

7

This is an appropriate case through which to recognize an equitable exception to Section 5. First, state habeas counsel conceded that he merely overlooked Mr. Beatty's substantial guilt-phase ineffectiveness claim. Second, Mr. Beatty has raised serious questions about whether he is guilty of capital murder. However, this Court need not reach the *Graves* issue because Mr. Beatty has satisfied § 5(a)(2) and should be allowed to proceed on that basis.

D. **Although it is premature for this Court to address the merits of Mr. Beatty's habeas claims, the State focuses more than half of its motion to dismiss on the argument that Mr. Beatty's habeas claims should be denied on the merits. Accordingly, Mr. Beatty will respond.**

At the current threshold stage, it is inappropriate for this Court to make a final determination on the merits of the underlying claims for relief presented in the subsequent application. *See Ex parte Blue*, 230 S.W.3d 151, 162–63 (Tex. Crim. App. 2007). However, because the State has controverted the merits of all three claims using misleading factual and legal analysis, Mr. Beatty will briefly respond to the State's assertions.

8

## 1. Ineffective assistance of direct appeal counsel.

In his first claim for relief, Mr. Beatty has alleged that direct appeal counsel was ineffective for failing to challenge the admissibility of hearsay testimony from Ms. McCarty, specifically that Ms. Click told her that she had allegedly asked Mr. Beatty to leave sometime before 4:00 p.m. on the day of the offense. Subsequent Application at 16–26. Direct appeal counsel recognized that Ms. McCarty's testimony was improperly admitted, and even argued as much in Mr. Beatty's challenge to the sufficiency of the evidence. However, direct appeal counsel also falsely instructed the Court that the hearsay testimony should have been, *but was not*, objected to at trial. Operating on that assumption, he did not raise a direct challenge to its admission. This was not the result of a reasoned strategy to forfeit a meritorious claim, but the result of counsel's misreading or failing to read the twenty-one pages of the trial transcript in which the parties argued over the admissibility of Ms. Click's testimony, during which trial counsel objected on hearsay grounds at least three times.

The State argues that Mr. Beatty's application should be dismissed because the statement was admissible under a new theory. The State's

9

argument is without merit, and furthermore irrelevant to direct appeal counsel's ineffectiveness in forfeiting this issue because of a lack of familiarity with the trial record.

> **a.    The question whether the admission of the statement was reversible error is premature.**

The State's argument on the admissibility of the McCarty's testimony is premature in two respects.  First, as discussed above, the issue before the Court now is simply whether Mr. Beatty has met the requirements of § 5.  Second, even once authorized, Mr. Beatty only need show a *reasonable probability* of a different outcome on appeal.  *Ex parte Santana*, 227 S.W.3d 700, 704–05 (Tex. Crim. App. 2007).  A reasonable probability is less than a preponderance of the evidence.  *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).  He need not prove *entitlement* to relief on the underlying appellate issue in order to be entitled to habeas corpus relief on his claim.  Indeed, if his habeas application is successful, the remedy will be a direct appeal in which that issue is heard and resolved by this Court.  *Ex parte Miller*, 330 S.W.3d 610, 626 (Tex. Crim. App. 2009).

10

**b.** **Notwithstanding its prematurity, the State's argument for the admissibility of Ms. McCarty's testimony misapplies evidentiary rules and ignores the relevant facts in an effort to excuse direct appeal counsel's failure to read or notice the twenty-one pages of the trial record related to trial counsel's objections to Ms. McCarty's inadmissible hearsay testimony.**

The State's argument as to the admissibility of Ms. McCarty's hearsay testimony ignores that *the statement contained two levels of hearsay, not one.* *See* Motion to Dismiss at 14–18. As noted in the subsequent application, Ms. McCarty's testimony

> contained two layers of hearsay: (1) that Ms. Click had asked Mr. Beatty to leave and (2) that Ms. Click told Ms. McCarty that she had asked Mr. Beatty to leave. In order for Ms. Click's statement to Mr. Beatty to be considered for its truth, both layers of hearsay must fit into a statutorily enumerated exception to the rule against hearsay. TEX. R. EVID. 805.

Subsequent Application at 24. Nowhere in its motion to dismiss does the State address the underlying hearsay—Ms. Click purportedly telling Mr. Beatty to leave. Considering that no exception to that principal layer of hearsay exists, and that the State has not even attempted to identify an exception that does fit, this failure on the State's part ultimately defeats its case.

11

The State suggests that the other layer of hearsay—Ms. Click's out-of-court statement to Ms. McCarty—was admissible under both the state of mind exception and as an excited utterance. Motion to Dismiss at 16–17. The State's continued reliance on the state of mind exception is misplaced. As explained in the subsequent application, the state of mind exception does not permit "the introduction of 'a statement of memory or belief to prove the fact remembered or believed.'" Subsequent Application at 24 (citing *Gibbs v. State*, 819 S.W.2d 821, 837 (Tex. Crim. App. 1991). If such were the case, the rule against hearsay would be eviscerated. *See Norton v. State*, 771 S.W.2d 160, 166 (Tex. App.—Texarkana 1989). Ms. Click's statement to Ms. McCarty that she told Mr. Beatty to leave is simply not a statement of her then-existing state of mind.

Similarly, the State's assertion that the excited utterance exception applies is misguided. Motion to Dismiss at 16–17. Despite the conceded importance of this testimony to the State, it never even offered this rationale as a basis of admission at Mr. Beatty's trial, with good reason; while Ms. McCarty claimed that Ms. Click was stressed and crying during their conversation, there was no indication in the record that this was the spontaneous, impulsive type of statement that this exception

12

allows. There is no indication Ms. Click was under the influence of a "startling event or condition." Tᴇx. R. Evɪᴅ. 803(2). Indeed, Ms. McCarty could not even guess how long prior to their conversation Ms. McCarty told Mr. Beatty to leave, indicating that Ms. Click was in a state of reflection, rather than a state of shock. The evidence introduced at trial, that Ms. Click and Mr. Beatty argued every day, and the evidence introduced in Mr. Beatty's application that Ms. Click told Mr. Beatty to leave nearly every day, further undermine the State's argument that Ms. Click was in the throes of a startling event when she once again told her son to leave on November 25, 2003. Additionally, even if this Court were inclined to agree with the State that Ms. Click's reflective statement to Ms. McCarty was an excited utterance, there is no evidence that the imbedded layer of hearsay is covered by this exception.[4]

Moreover, the Motion to Dismiss ignores the fact that appellate counsel himself argued that the statement was inadmissible, *see* Subsequent Application at 17, but yet failed to plead the issue as a

---

[4] The State also criticizes Mr. Beatty because "[h]e totally ignore[d]" that the evidence was also offered and admitted under Texas Code of Criminal Procedure, Article 38.36. Motion to Dismiss at 15. However, the State also concedes the irrelevance of its own argument, because that Article does not operate as a hearsay exception. *Id.*

13

ground of error on appeal, because he mistakenly believed it was not objected to. The error was preserved; appellate counsel recognized that the testimony was inadmissible; and every court (as well as now the State) has recognized that the statement was necessary to sustain Mr. Beatty's capital conviction. Because trial counsel's objection was preserved, and there is no legal basis for the statement's admission, Mr. Beatty is entitled to proceed on the merits of this claim.

2. **The State misreads Mr. Beatty's claim that trial counsel was ineffective for failing to investigate and present evidence showing he did not commit burglary.**

Mr. Beatty has alleged in his second claim that trial counsel was ineffective for failing to investigate and present evidence that rebutted the burglary charge. Subsequent Application at 26–37. The State claims that "his sole support" for this claim is "based entirely" on trial counsel's failure to present testimony from Ms. Wilkerson that Mr. Beatty did not commit a burglary. Motion to Dismiss at 19. The State is mistaken. In his subsequent application, Mr. Beatty presents ample new evidence that was not presented at trial, including the affidavit of Aaron Bowers and the testimony of multiple witness—none of whom testified or were even interviewed by the defense—from his state evidentiary hearing.

14

Subsequent Application at 32–35. All of this testimony, in addition to Ms. Wilkerson's affidavit, supports the second claim for relief.

The State also "finds it rather ironic" that some of this evidence is similar to Ms. McCarty's testimony, which was inadmissible. Motion to Dismiss at 19. Rather than being "ironic," trial counsel had a duty to present evidence to combat Ms. McCarty's testimony. Counsel was aware before opening statements that this evidence was going to be admitted for its truth. After inadmissible evidence has been admitted, trial counsel may "meet, destroy, or explain [the inadmissible evidence] by introducing rebutting evidence" without waiving error. *Leday v. State*, 983 S.W.2d 713, 719 (Tex. Crim. App. 1998). Because this testimony was so critical to the State's case, trial counsel had a duty to conduct reasonable investigations and present evidence to rebut it. The evidence cited in the subsequent application does just that.[5] Subsequent Application at 26–37.

---

[5] Absent Ms. McCarty's testimony, the evidence simply would have been insufficient for a conviction and a directed verdict required.

**3.** **The State analyzes Mr. Beatty's claim that the State gave the jury a false impression under an incorrect legal theory.**

The State addresses Mr. Beatty's third claim, that the State gave the jury a false impression of what Ms. Click asking Mr. Beatty to leave actually meant, as if it were a claim alleging the State made an improper closing argument. Motion to Dismiss at 27–29. However, Mr. Beatty makes no such allegation. Instead, his argument is that new evidence presented in his application shows that Ms. Click had repeatedly asked Mr. Beatty to leave without actually withdrawing her consent for Mr. Beatty to enter.[6] Subsequent Application at 37–45. Under the Texas standard, regardless of whether the State had knowledge that they were providing a false impression, such a claim can succeed. *See Ex parte Chabot*, 300 S.W.3d 768, 770–71 (Tex. Crim. App. 2009). When the State referred to the inadmissible hearsay from Ms. McCarty twenty-five times, eight of which specifically were tied to the issue of consent, a false impression was created. Subsequent Application at 41, 44–45.

---

[6] The fact that this claim relies on new evidence also demonstrates the State's confusion when it referred to this claim as a record-based, direct appeal claim. Motion to Dismiss at 11.

## CONCLUSION

For the foregoing reasons, Mr. Beatty respectfully requests that this Court deny the State's motion to dismiss, and stay his execution to allow him to proceed on his facially meritorious constitutional claims, all of which demonstrate it is more likely than not that he is innocent of capital murder.

Respectfully submitted,

_____
Thomas Scott Smith
State Bar Number 18688900
120 South Crockett Street
P.O. Box 354
Sherman, Texas 75091-0354
smithlaw@airmail.net
T: (903) 870-1446
F: (903) 868-8686

*Attorney for Applicant,*
*Tracy Lane Beatty*

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 6th day of August, 2015, a copy of this Applicant's Response to State's Motion to Dismiss Subsequent Application for Writ of Habeas Corpus and to Deny Request for Stay of Execution was electronically served on the attorney for The State, Michael J. West, Assistant Criminal District Attorney, 100 N. Broadway, 4th Floor, Tyler, Texas 75702, at mwest@smith-county.com.

_____
Thomas Scott Smith

18