# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-25-00027-CR

---

**Ex parte Tony Ramirez**

---

### FROM THE 460TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-19-207142, THE HONORABLE SELENA ALVARENGA, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Tony Ramirez filed an application for a writ of habeas corpus, seeking to challenge his conviction for the felony offense of driving while intoxicated ("DWI"). *See* Tex. Code Crim. Proc. art. 11.072; Tex. Penal Code §§ 49.04, .09(b). The trial court denied his application, and he appeals the trial court's ruling. We will affirm the trial court's order.

## BACKGROUND

Ramirez was charged with felony DWI with two or more prior convictions, and the indictment alleged that Ramirez had previously been convicted of DWI on four prior occasions. *See* Tex. Penal Code §§ 49.04, .09(b). The police report and accompanying documents stated that officers responded to a 911 call from a witness who reported that someone had sideswiped his car but did not stop. The witness provided a description of the vehicle and its license plate number and followed the vehicle until the officers arrived. After observing a vehicle matching the description given by the witness, the officers initiated a traffic stop and identified Ramirez as the driver. During their interaction with Ramirez, the officers noticed that

he smelled like alcohol, was swaying, had glassy eyes, and mumbled. The officers performed field-sobriety tests, and Ramirez displayed sustained nystagmus and lack of smooth pursuit during the horizontal-gaze-nystagmus test, displayed six indicators of intoxication during the walk-and-turn test, and had difficulty following instructions. They also found one partially consumed beer can in the center console and found another on the floorboard; Ramirez admitted to drinking two beers. A preliminary breath test showed a blood-alcohol concentration of 0.162. At the time of the traffic stop, Ramirez was on parole for a murder conviction.

After being charged, Ramirez agreed to plead guilty to the offense under the terms of a plea-bargain agreement. The State agreed to recommend that he be sentenced to ten years in prison but placed on community supervision for ten years. The plea paperwork listed as a condition of community supervision that Ramirez serve 180 days in jail. The plea agreement specified that he was pleading guilty to the charged offense, outlined the punishment range for the third-degree felony, discussed how the punishment recommendation was not binding on the trial court, mentioned that he would be allowed to withdraw his plea if the trial court rejected the agreement, and stated that he would need the trial court's permission to appeal any matter that had not already been raised in a motion if the trial court accepted the agreement. The plea paperwork also specified that Ramirez understood the nature of the charge, the terms of the plea agreement, the admonishments in the agreement, and the consequences of entering a guilty plea. Further, the paperwork stated that Ramirez knew that he had the right to a jury trial, the right to confront and cross-examine witnesses, and the right to remain silent and stated that he was "freely, knowingly, and voluntarily" waiving those and other rights, confessing to committing the charged offense, and entering his guilty plea. Ramirez signed the agreement. Ramirez's appointed trial attorney signed the portion of the agreement stating that he carefully reviewed

the agreement with Ramirez and that Ramirez was mentally competent, understood the admonishments, was aware of the consequences of pleading guilty, and was "freely, voluntarily, knowingly and intelligently entering his . . . plea of guilty, waiver, stipulation and judicial confession." However, his attorney also wrote and signed a statement regarding the agreement that "Ramirez is entering this plea against the advice of counsel."

During the plea hearing, the trial court explained the charge and set out the applicable punishment range, and Ramirez stated that he understood and did not have any questions. The trial court then discussed the terms of the plea agreement, including his being placed on community supervision for ten years and his confinement in jail for 180 days as a condition of his community supervision, and he responded that he understood the terms of the agreement. Further, he explained that he did not have a history of mental health issues. He then pleaded guilty and said that no one was forcing him to plead guilty or promising him anything in exchange for his plea, that he had gone over the agreement with his attorney and signed it, and that he had no questions. The trial court determined that Ramirez entered his plea freely and voluntarily.

Following this exchange, Ramirez's trial attorney questioned Ramirez about the plea agreement and the events leading up to it. Ramirez stated that his attorney spoke with him about the plea paperwork, advised him not to enter a guilty plea, and informed him that his decision to plead guilty could affect his release on parole in another case. Ramirez also agreed that his current trial attorney had replaced his previous attorney, that his trial attorney had not had an opportunity to review the discovery in the case, and that he had not informed his trial attorney what his previous attorney had done in the case. Ramirez then explained that even though his trial attorney recommended not pleading guilty and had not had an opportunity to

3

review the case, he still wanted to move forward with his guilty plea. In response to questions from the trial court, Ramirez acknowledged that his guilty plea could result in his parole being revoked and his being sent back to prison.

During a subsequent hearing, the trial court discussed the terms of the plea agreement again and reminded Ramirez that as a condition of his community supervision, he would have to be confined in jail for 180 days. The State told the trial court that the State intended for the confinement requirement to be satisfied by the time that Ramirez had already served in jail, but the State admitted that it was not sure how long Ramirez had been confined and recommended that the trial court reduce the requirement to 90 days. The trial court agreed and informed Ramirez that the new confinement obligation would only be 90 days. Ramirez's attorney explained that the confinement requirement was for "time you've already been in there" and that the trial court adjusted the requirement "so they are not holding you any extra time." Ramirez responded, "I got it," when asked if he understood the change. At the end of the hearing, the trial court accepted Ramirez's plea, found him guilty of the charged offense, and imposed a sentence consistent with the plea agreement. The trial court's written judgment of conviction sets out the terms of the plea agreement, including the requirement that Ramirez be jailed for 90 days but also be given credit for the 179 days he had already served.

A few months later, Ramirez filed an application for a writ of habeas corpus, arguing that his trial attorney provided ineffective assistance of counsel and that his guilty plea was involuntary. The State denied Ramirez's allegations. Ramirez's trial attorney submitted an affidavit, explaining that he was appointed to the case approximately three weeks before the plea hearing, that he informed Ramirez that he had not yet seen any discovery in the case other than the contents of the probable-cause affidavit, that Ramirez insisted on accepting the terms of the

4

proposed plea agreement even after being warned that a guilty plea could result in his parole being revoked, and that Ramirez entered his guilty plea against the advice of his trial attorney.

After reviewing Ramirez's application, the State's response, and Ramirez's trial attorney's affidavit, the trial court issued an order denying the requested relief. The trial court also issued, among others, findings of fact and conclusions of law stating that Ramirez's claims were without merit, that he failed to show that he received ineffective assistance of counsel, and that he failed to show that his guilty plea was not knowingly, voluntarily, and intelligently given.

Ramirez appealed the trial court's order denying his requested habeas relief and argued that the trial court abused its discretion by denying his writ application because his trial attorney provided ineffective assistance of counsel and because his guilty plea was not voluntary. *See Ex parte Ramirez*, 652 S.W.3d 841, 846 (Tex. App.—Austin 2022, no pet.). This Court overruled his challenge asserting that his trial attorney was ineffective because he failed to meet his burden of showing that his trial attorney's performance fell below an objective standard of reasonableness. *Id.* at 848. Next, this Court determined that the trial court did not abuse its discretion by failing to grant relief on Ramirez's claim that his guilty plea was involuntarily given. *Id.* at 849. Accordingly, this Court affirmed the trial court's order denying his requested habeas relief. *Id.*

Approximately two years later, Ramirez filed a subsequent application for writ of habeas corpus. In his application, he first asserted that the trial court's judgment of conviction was void because the 180 days of jail time was less than the two-year minimum sentence required for third-degree felony offenses. In his second ground, he argued that his guilty plea was involuntarily given. Essentially, he argued that he could not have voluntarily entered a plea when the trial court ultimately chose to assess a punishment that did not fall within the

5

permissible punishment range. In his third ground, he asserted that his trial counsel provided ineffective assistance. In presenting these claims, Ramirez did not file any affidavits or other evidence as support. The State responded and argued that the subsequent writ application should be denied because Ramirez failed to show that the claims made in his subsequent habeas application had not been and could not have been presented in the previous writ application.

After considering the habeas application and the State's response, the trial court denied the writ application and issued findings of fact and conclusions of law, including the ones summarized below:

> Applicant pleaded guilty to the offense pursuant to a plea bargain; he was sentenced to ten years' confinement, suspended for ten years, with DWI-specific conditions of community supervision, including 90 days in the Travis County Jail.
>
> In his present writ application, Applicant alleges 1) the judgment is void; 2) his plea was involuntary; and 3) he received ineffective assistance of counsel.
>
> Applicant pleads no new facts or evidence to attempt to establish why his subsequent application for writ of habeas corpus may be considered.
>
> Applicant does not meet his burden to establish that he is entitled to relief on the grounds above.

Ramirez appeals the trial court's order.[1]

---

[1] Ramirez tried to appeal the trial court's order, but his original notice of appeal was untimely. For that reason, this Court dismissed that appeal for want of jurisdiction. *See Ramirez v. State*, No. 03-24-00441-CR, 2024 WL 3879956, at *2 (Tex. App.—Austin Aug. 21, 2024, no pet.) (mem. op., not designated for publication). Following that ruling, Ramirez asked for and was given permission to file an out-of-time appeal and filed a new notice of appeal in this case. *See Ex parte McCarty*, No. 03-14-00575-CR, 2015 WL 2089091, at *4 (Tex. App.—Austin Apr. 29, 2015, no pet.) (mem. op., not designated for publication) (explaining that out-of-time appeal is permissible under article 11.072).

**STANDARD OF REVIEW AND GOVERNING LAW**

Appellate courts review a trial court's ruling on an application for writ of habeas corpus under an abuse-of-discretion standard. *Ex parte Zantos-Cuebas*, 429 S.W.3d 83, 87 (Tex. App.—Houston [1st Dist.] 2014, no pet.). "A trial court abuses its discretion when its ruling is arbitrary or unreasonable." *Gaytan v. State*, 331 S.W.3d 218, 223 (Tex. App.—Austin 2011, pet. ref'd). However, a trial court does not abuse its discretion if its ruling lies within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008); *see Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002). Under that standard, appellate courts review the record evidence "in the light most favorable to the trial court's ruling." *Ex parte Nelson*, 546 S.W.3d 742, 746 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

The writ of habeas corpus is an extraordinary remedy. *See Ex parte Smith*, 444 S.W.3d 661, 666 (Tex. Crim. App. 2014). To succeed under a post-conviction writ of habeas corpus, the applicant must prove, "by a preponderance of the evidence, the facts that would entitle him to relief." *Ex parte Ali*, 368 S.W.3d 827, 830 (Tex. App.—Austin 2012, pet. ref'd). In habeas corpus proceedings, "[v]irtually every fact finding involves a credibility determination," and "the fact finder is the exclusive judge of the credibility of the witnesses." *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex. Crim. App. 1996). "When the trial court's findings of fact in a habeas corpus proceeding are supported by the record, they should be accepted" by the reviewing court. *See Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). A "trial court's resolution of mixed questions of law and fact that do not turn on witness credibility and its resolution of pure questions of law" is reviewed de novo. *Ex parte Beck*, 541 S.W.3d 846, 852 (Tex. Crim. App. 2017).

An individual convicted of a felony or misdemeanor may seek habeas "relief from an order or judgment of conviction ordering community supervision." Tex. Code Crim. Proc. art. 11.072, § 1. When a person files a writ application, he "must be, or have been, on community supervision, and the application must challenge the legal validity of . . . the conviction for which or order in which community supervision was imposed" or "the conditions of community supervision." *Id.* art. 11.072, § 2(b). Regarding a subsequent application for writ of habeas corpus filed after the final disposition of an initial one, article 11.072 provides as follows:

> [A] court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application.

*Id.* art. 11.072, § 9(a); *see Ex parte Nelson*, 546 S.W.3d at 747 ("Article 11.072 normally restricts habeas applicants to just 'one bite of the apple.'" (quoting *Ex parte Santana*, 227 S.W.3d 700, 703 (Tex. Crim. App. 2007))). Further, article 11.072 clarifies that "a factual basis of a claim is unavailable on or before a date described by that subsection if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date." Tex. Code Crim. Proc. art. 11.072, § 9(c). "The rejection of an initial habeas corpus application is the trigger event for the Section 9 subsequent application restrictions." *Ex parte Salazar*, 510 S.W.3d 619, 625 (Tex. App.—El Paso 2016, pet. ref'd).

## DISCUSSION

On appeal, Ramirez presents three issues challenging the trial court's order denying his subsequent habeas application. First, he argues that his judgment of conviction is void because the punishment assessed—180 days' confinement in jail—"fell below the minimum range of punishment." Second, he contends that his trial attorney was ineffective because he failed to investigate the scene of the incident leading to his arrest, failed to discover and present evidence regarding the police officers' "lack of reasonable suspicion and probable cause," failed to file a motion to suppress, and failed to object to the trial court's "misleading terms on punishment and sentence" concerning the confinement requirement. He asserts that he would not have pleaded guilty had his trial attorney provided effective assistance. Third, he urges that his guilty plea was not and could not have been voluntarily and knowingly made because the trial court ultimately imposed a sentence that was not permissible for a third-degree felony. For these reasons, he contends that the trial court should have granted his habeas application.

As set out above, Ramirez asserts in his first issue that the judgment was void because the sentence imposed was not authorized by statute. However, he has provided no new "specific facts establishing" that this claim could not have been presented in his first habeas application. *See* Tex. Code Crim. Proc. art. 11.072, § 9(a); *see Ex parte Nelson*, 546 S.W.3d at 748 (determining that trial court properly denied subsequent writ application "because it failed to overcome Section 9's new-factual-basis procedural bar"). Even if Ramirez could present this type of claim in his subsequent writ application, *see Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) (noting that "[a] sentence that is outside the maximum or minimum range of punishment is unauthorized by law" and that "[a] defendant may obtain relief from an

9

unauthorized sentence on direct appeal or by a writ of habeas corpus"), we would be unable to conclude that he is entitled to relief. The trial court sentenced Ramirez to ten years' imprisonment, which was a permissible punishment for a third-degree felony, *see* Tex. Penal Code § 12.34, and consistent with the plea agreement elected to suspend the punishment, place him on community supervision for ten years, order that he be confined in jail for 90 days as a condition of community supervision, and release him for time served. *See Ex parte Dangelo*, 339 S.W.3d 143, 148 (Tex. App.—Fort Worth 2010) ("Trial courts have wide discretion to impose reasonable community supervision terms that are in the defendant's, the victim's, and society's best interests"), *aff'd*, 376 S.W.3d 776 (Tex. Crim. App. 2012). Trial courts are specifically required to order as a condition of community supervision that a defendant be confined in a county jail when convicted of DWI after having been previously convicted of the same offense, Tex. Code Crim. Proc. art. 42A.401, and have the discretion to order the defendant confined for up to 180 days, *id.* art. 42A.302(a). Accordingly, Ramirez would not be entitled to relief on the grounds alleged because the punishment was not an unauthorized one.

Regarding his ineffectiveness issue, Ramirez did not establish that any of the ineffectiveness claims contained in his subsequent application had not been and could not have been presented in the previous application through reasonable diligence. Tex. Code Crim. Proc. art. 11.072, § 9; *see also Ex parte Nelson*, 546 S.W.3d at 748 (affirming denial of relief after deciding that writ application failed to show that claim was not ascertainable through exercise of reasonable diligence). In fact, the ineffectiveness claims in his first application asserting that this trial counsel should have investigated the case more thoroughly and filed a suppression motion arguing that there was no reasonable suspicion to justify the traffic stop are similar to many of the claims in his subsequent application. *See Ex parte Nelson*, 546 S.W.3d at 748 (determining

10

that applicant was not entitled to relief requested in subsequent application under article 11.072 where claims in subsequent application were "nearly identical" to those from earlier application).

Concerning Ramirez's new ineffectiveness claim that his attorney improperly failed to object to the requirement that he be confined in jail as part of his community supervision, he has not established how the factual bases for this claim were not available to him at the time he raised his other claims arising out of the same proceeding through his previous habeas application. Tex. Code Crim. Proc. art. 11.072, § 9; *see Ex parte Nelson*, 546 S.W.3d at 748. Additionally, we note that the trial court was required to order a period of confinement because of the nature of his conviction. Tex. Code Crim. Proc. art. 42A.401. The period of confinement ordered was within the range authorized by statute as set out above. *Id.* art. 42A.302(a); *see Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) ("To show ineffective assistance of counsel for the failure to object during trial, the applicant must show that the trial judge would have committed error in overruling the objection."). Moreover, as set out earlier, his trial attorney repeatedly advised him not to plead guilty, but he disregarded that advice and pleaded guilty anyway. *See Acosta v. State*, 160 S.W.3d 204, 211 (Tex. App.—Fort Worth 2005, no pet.) (overruling ineffective-assistance claim and noting that defendant "decided to enter an open plea of guilty against the advice of his trial counsel").

Turning to his third issue, in which he claims that his plea was not knowingly and voluntarily made because of the confinement requirement, Ramirez has failed to show that the factual basis for that claim was not ascertainable through reasonable diligence when he filed his first writ application. *See Ex parte Nelson*, 546 S.W.3d at 748. Regardless, the confinement requirement was listed in the terms of the plea agreement that he signed, and the agreement reflected that he understood the terms of the agreement and was voluntarily, knowingly, and

11

freely entering his plea. *See Ex parte Ramirez*, 652 S.W.3d at 849. Additionally, the trial court repeatedly reviewed the terms of the plea agreement with him, including the confinement requirement, and he informed the court that he understood that confinement was required under the agreement and had no questions about the agreement before entering his plea. *See Davison v. State*, 405 S.W.3d 682, 686, 687 (Tex. Crim. App. 2013) (explaining that if record "affirmatively discloses that the defendant's guilty plea was adequately informed, due process is satisfied"); *see also Ex parte Ramirez*, 652 S.W.3d at 849 (determining that trial court did not abuse its discretion by concluding that Ramirez voluntarily entered his plea).

For these reasons, we conclude that the trial court did not abuse its discretion by denying Ramirez's application for writ of habeas corpus and overrule his issues on appeal.

## CONCLUSION

Having overruled Ramirez's issues on appeal, we affirm the trial court's order denying his requested habeas relief.

_____
Karin Crump, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed:   September 4, 2025

Do Not Publish

12